(No. 19588.—)
NICK STATHOPULOS, Appellee, *vs.* NICK KORSON *et al.* Appellants.

*Opinion filed October 19, 1929.*

GEORGE W. LUDDEN, for appellants.

McINERNEY & POWER, (JOSEPH A. McINERNEY, JR., of counsel,) for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Nick Stathopulos filed a bill in the superior court of Cook county on April 3, 1925, against Nick and Myrtle Korson, husband and wife, seeking an accounting and discovery. The litigation arose out of the purchase, operation and alleged sale of a 99-year leasehold interest in certain improved real estate located in the city of Chicago. The cause was referred to a master in chancery to take the proofs and report his conclusions of law and fact. The master found that the complainant was entitled to an accounting and recommended that a decree be entered in accordance with the findings set forth in his report and the prayer of the bill. Objections were filed to the master's report, and those not sustained were overruled and ordered to stand as exceptions before the chancellor. A decree was thereafter entered as recommended by the mas-

ter. From that decree the defendants have prosecuted an appeal to this court.

The facts as disclosed by the record are substantially as follows: About December 1, 1915, Nick Stathopulos, Nick Korson and Harry Rosenshield purchased the 99-year leasehold interest of John Refakes in an apartment building located at Fifty-fifth street and Blackstone avenue, in the city of Chicago. The building contained fifty-one apartments, seventeen stores and a lodge hall. The price agreed upon was $6600, of which Stathopulos paid $1000, Korson $3400 and Rosenshield $2200. Stathopulos, who is a nephew of Korson and had lived with him for ten or eleven years, claims that each purchaser was to receive a one-third interest, that Korson advanced $1200 for him, and that he later re-paid Korson for such advancement. The amount of Stathopulos' interest and the re-payment claimed to have been made by him are denied by Korson. The $6600 was paid to one Strong, a real estate broker, who disbursed the money under the agreement of purchase and furnished to each of the purchasers a written itemized statement of account showing a balance unexpended in amount of $142.80, one-third of which he returned to each of the purchasers of the leasehold interest. Refakes was placed in charge of the building, collecting rents, paying expenses, etc. Operating the building was not a financial success and the owners of the leasehold advanced money to Refakes to pay some of the expenses. During August, 1916, defendants moved into one of the twenty-one vacant apartments of the building and occupied it as a residence till about July, 1921. During their occupancy they paid no rent until after June, 1918. About September 1, 1916, Refakes was replaced as manager of the flat-building by a real estate man named Coughenour, who was given full charge of the building in the collection of rents, payment of operating expenses, interest on mortgages, taxes and repairs. About this time Mrs. Korson was given the privi-

lege of furnishing eleven of the vacant flats at her own expense and renting them, and she was to pay the unfurnished rental price therefor. She, with the assistance of one Foster, an elderly man who lived with the Korsons and who seems to have had some connection with Coughenour's office, collected all the rents of the building, kept an account thereof and paid the money over to Coughenour, who allowed her $75 per month for her services. On October 10, 1916, the one-third interest of the original purchaser Rosenshield was assigned to Korson for the sum of $2000. Expenses in connection with the assignment were $85.35, and the entire amount was given to Coughenour by Korson and disbursed by Coughenour. Complainant testified to conversations with Korson about the purchase of Rosenshield's share and contends that he paid Korson for one-half of Rosenshield's interest, but Korson maintains complainant paid no part of it to him and has no interest therein. The record shows a withdrawal from complainant's bank account on October 11, 1916, of $1000, and a cashier's check dated October 11, 1916, issued by the same bank in amount of $1000, which was endorsed by Nick Korson and paid by the bank. This payment of money, after introduction in evidence of the cashier's check, was later explained by Korson on the hearing as being a payment made to him through Stathopulos from the latter's father in Greece, who had been guardian or trustee for Korson. The rentals from the building during Coughenour's management were insufficient to pay all its operating expenses and other obligations and Korson and Stathopulos were obliged to advance money from time to time for those purposes. Coughenour would usually talk with Mrs. Korson about the need of additional funds to meet the obligations. He kept a set of books showing the money received from the rentals and payments made by the owners of the leasehold to cover deficiencies caused by expenses, and he stated that he issued monthly statements of account in triplicate,

but neither his books nor any of his monthly statements were offered in evidence. Neither does the record show as to whether Refakes, while agent of the building, kept books of account or ever rendered any financial statement. In June, 1918, there was due for rent to one Derby and wife, owners of the premises, approximately $2300. The owners served notice of forfeiture of the lease upon the leasehold owners and their agent, Coughenour, and on June 29 the leasehold owners executed an assignment to one Atkins, agent for the owners of the fee, who took possession of the building, together with the furnishings in the flats furnished by Mrs. Korson. The Korsons remained in the building and leased one of the flats from Atkins for residence purposes for a year upon the basis of $30 per month. Nothing further was done at this time relative to the forfeiture of the 99-year lease, and Atkins continued to manage the building until August, 1920, when he was succeeded by Reid, a real estate broker representing the owners. During the summer of 1920 Stathopulos had some conversations with Korson relative to a contemplated visit to Greece for a year or more, at which time he planned to get married. On July 30, 1920, he executed and delivered an assignment of his interest in the lease to Korson. Complainant contends the assignment was made to facilitate a possible sale of their leasehold interest and so that papers therefor would not be required to be sent to Europe. The agreement, according to complainant, was that Korson might sell their entire interest in the leasehold and retain the proceeds in trust for complainant until his return. This position is denied by Korson, who asserts that he purchased complainant's interest in the lease, which at that time was not canceled of record, and that he paid $500 in cash to complainant, taking the money from his safety deposit box at the bank. No one was present at the time except he and complainant. Complainant left for Greece about October, 1920, was married while there, and he and his

wife returned to Chicago during February, 1922. On October 5, 1920, the owners of the property, Derby and wife, executed a declaration of forfeiture of the 99-year lease on the property and caused notices thereof to be served on the persons interested in or who had been connected with the building, with the exception of complainant. On October 27, 1920, the declaration of forfeiture was filed for record in the Cook county recorder's office. During the same month the owners of the property negotiated a new lease upon the premises for 198 years with one Thompson. Korson continued to reside in the building, had refused to pay rent to the owner's agent, Reid, and testified that Coughenour had advised him to stay there, and he did so, and that he was holding possession of the building because he still had some interest there. The assignment given by complainant to Korson on July 30, 1920, was filed in the recorder's office of Cook county March 26, 1921. It appears that legal proceedings were instituted relative to removing cloud from the title, and prior to July, 1921, the Derbys, owners of the premises, and Thompson, the new lessee, after some negotiations with Korson relative to his alleged rights in the property, agreed to pay Korson $8400, less ten per cent to be deducted therefrom for the owners' attorney, on the basis of $45 per month for two years and $270 per month for the next two years, together with a note for $1400 executed by one Seagraves, and the conveyance to Korson by Thompson, by quit-claim deeds, of five different pieces of real estate located in three or four States. The agreement was carried out and the payments made by Thompson to Korson were deducted from the amount Thompson agreed to pay the owners as rental under the terms of the 198-year lease. The Korsons vacated the building during July, 1921, and the last payment from Thompson to Korson was made June 1, 1925. Complainant returned from Greece during February, 1922, interviewed Korson, and learned of the transactions in connection with

the leasehold interest in the building that had occurred during his absence. On March 30, 1922, a check for $1000 was given to complainant by Korson's wife. This check was paid from the joint account of Korson and his wife. Complainant contends this payment was a part of his share of the proceeds of the settlement made by Korson with Derby and Thompson, while defendants claim it was a loan. No evidence of indebtedness was taken at the time by Mrs. Korson from complainant. She brought a suit for the amount in the municipal court of Chicago. That action was pending when the instant case was filed and the decree in this case enjoined the further prosecution of that action. The evidence shows that further conversations and interviews were had between complainant and Korson relative to their financial affairs, at which times complainant demanded an accounting and his share in the proceeds of the leasehold interest, which Korson refused to consider. One of the interviews resulted in physical violence, and thereafter this proceeding was instituted by Stathopulos.

The chief contentions of appellants are that complainant has failed to establish his right to an accounting, that he is guilty of *laches,* and that if there was any conveyance in trust by complainant of his interest to Korson it was an express trust and void under the Statute of Frauds.

This is not an action to enforce a contract for the sale of the leasehold interest or any part thereof. The leasehold originally controlled and owned by the parties hereto is no longer their property. An accounting of the proceeds therefrom is what is sought by this bill, and as we view it no freehold is involved and this court has no jurisdiction of the appeal. (*Stolowski* v. *Wierzbowski,* 322 Ill. 74; *Olin* v. *Reinecke,* 322 id. 449; *Duncanson* v. *Lill,* 322 id. 528; *Parish* v. *Bainum,* 291 id. 374.) The only question is the right of complainant to an accounting.

The cause is therefore transferred to the Appellate Court for the First District. *Cause transferred.*